IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ANDREW ROVITO,

                Petitioner,

  v.

T. KROGER,[1]

                Respondent.

OPINION & ORDER

15-cv-729-jdp

---

Petitioner Andrew Rovito is a prisoner in the custody of the Federal Bureau of Prisons (BOP). Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241, contending that his current confinement is the result of a prison disciplinary decision in which the BOP stripped petitioner of good-time credit without "some evidence," in violation of due process.[2]

I held an evidentiary hearing on May 4, 2016, at which petitioner stated that the facts as presented by respondent were not in dispute. For reasons stated more fully on the record, I will deny the petition.

BACKGROUND

On December 22, 2014, while on home confinement, petitioner received a pass to go to Sam's Club in Naperville, Illinois, between 12:00 p.m. and 4:00 p.m. Petitioner "checked out" at 11:58 a.m. and returned at 3:59 p.m. Petitioner states that he went to Sam's Club,

---

[1] At the May 4, 2016, evidentiary hearing, respondent informed the court that L.C. Ward is no longer the warden at Oxford Federal Correctional Institution. T. Kroger is currently serving as acting warden, and the court has modified the caption accordingly.

[2] Petitioner has withdrawn any potential equal protection claim he may have raised in his petition.

the approved location, but could not enter the store because he had forgotten his membership card. To "prove that [he] was in the area," he went to a nearby Jewel-Osco as "an act in good faith." Dkt. 28-14, at 2. Petitioner claims that he returned home after that.

When petitioner's resident advisor (RA) at the residential reentry center requested documentation of his trip to Sam's Club, petitioner could provide only a receipt for a 12:36 p.m. purchase at the Jewel-Osco. Petitioner could not prove that he had gone to Sam's Club and could not account for where he was between 12:36 p.m. and 3:59 p.m. As a result, his RA drafted an incident report charging petitioner with escape, in violation of BOP disciplinary Code 200.

The incident report provides that when petitioner met with his RA for his weekly case management meeting, petitioner did not provide documentation of his "scheduled movement." Petitioner stated that he had forgotten his documentation (i.e., receipts) at home, and his RA told him that he had until 4:00 p.m. the next day to produce the receipts. When petitioner returned to the residential reentry center the next day without documentation, the RA filed an incident report. Dkt. 28-2. An investigation followed. Dkt. 28-3.

On January 9, 2015, petitioner received notice of a disciplinary hearing. Dkt. 28-8. The hearing took place on January 13, 2015. Dkt. 28-4. At the hearing, petitioner denied the charge and requested that it be reduced to "unauthorized movement." *Id.* Petitioner did not produce or request any witnesses. *Id.* The Center Disciplinary Committee (CDC) determined that petitioner had committed the charged violation. The CDC relied on the sign-in/sign-out log that tracked petitioner's movement on December 22, 2014; petitioner's supervision plan; and the Jewel-Osco receipt. *Id.* at 2.

On January 27, 2015, a BOP discipline hearing officer reviewed the CDC's findings and determined that evidence supported the charge. The evidence demonstrated that petitioner "deviated from custody" by not going to his approved destination and by going to an unauthorized location. The discipline hearing officer sanctioned petitioner 27 days of good conduct time and 33 days of non-vested good conduct time.[3] Also as a result of the escape, the BOP removed petitioner from the Residential Drug Abuse Program; he did not have the opportunity to complete the program or earn the one year's worth of good-time credit that typically accompanies completion of the program.

According to BOP Program Statement 5270.09, Inmate Discipline Program, a Code 200 Escape is a "high severity level" prohibited act. Dkt. 28-1, at 46. Available sanctions include forfeiting earned statutory good time or non-vested good conduct time. *Id.* at 49. The Program Statement recommends disallowing 25-50 percent of an inmate's available good-time credit available for that year.

After recalculating his projected release date, the BOP determined that petitioner was no longer within one year of release and relocated him from home confinement to a correctional institution.

---

[3] From the discipline hearing officer's affidavit:

> Rovito earned 54 days Good Conduct Time (GCT) for the anniversary year in which he received the incident report. Policy requires a mandatory sanction of disallowance of 50% of Rovito's earned GCT for a 200-level violation and I disallowed 27 days GCT. In addition, 50% or up to 60 days (whichever is less) can be forfeited from his Non-Vested GCT. His Non-Vested GCT balance was 108 days and I only forfeited 33 days. Both of these sanctions are within the guidelines established in policy.

Dkt. 28, ¶ 18.

ANALYSIS

Petitioner contends that his current incarceration is unconstitutional because the BOP did not have any evidence that he escaped from custody. Petitioner contends that losing his good-time credit amounts to a deprivation of liberty, in violation of his due process rights.

"Federal inmates must be afforded due process before any of their good time credits . . . can be revoked." *Jones v. Cross*, 637 F.3d 841, 845 (7th Cir. 2011). If a disciplinary decision deprives an inmate of good-time credit without due process—and, as a result, lengthens the inmate's period of incarceration—the inmate may petition the court for a writ of habeas corpus. *See Waletzki v. Keohane*, 13 F.3d 1079, 1080 (7th Cir. 1994) ("[G]ood-time credits reduce the length of imprisonment, and habeas corpus is available to challenge the duration as well as the fact of custody. . . . [W]hen [a petitioner] is attacking the fact or length of his confinement in a federal prison on the basis of something that happened after he was convicted and sentenced, habeas corpus is the right remedy." (internal citations omitted)).

A disciplinary decision that results in a loss of good-time credit comports with due process when an inmate receives: (1) advance written notice of the charges; (2) an opportunity to call witnesses and present evidence in his defense; and (3) a written statement by the factfinder identifying the evidence they relied on and the reason(s) for the decision. *Wolff v. McDonnell*, 418 U.S. 529, 563-67 (1974). The decision must also be supported by "some evidence" to satisfy due process. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) ("[R]evocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary board

are supported by some evidence in the record." (internal citation and quotation marks omitted)).

"Some evidence" is a "lenient standard requiring no more than a modicum of evidence." *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000), *as amended*, (Aug. 18, 2000) (internal citation and quotation marks omitted). "Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id.* (citation and internal quotation marks omitted). Evaluating whether some evidence supports a disciplinary decision "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56.

Petitioner does not contend that he did not receive notice, opportunity to be heard, or a written explanation of the decision; he contends only that some evidence does not support the determination.

BOP Code 200 provides: "Escape from a work detail, non-secure institution, or other non-secure confinement, including community confinement, with subsequent voluntary return to Bureau of Prisons custody within four hours." 28 C.F.R. § 541.3. As I discussed at the hearing, the evidence demonstrates that petitioner, while out on a pass from home confinement, went to a location other than the approved destination. Petitioner does not dispute this point. And the orientation handbook that petitioner received when he transferred to home confinement explicitly states that inmates must strictly adhere to pass itineraries and that "[f]ailure to follow the approved itinerary is considered an Unauthorized

5

Movement, and will result in an incident report." Dkt. 27-1, at 9. The bottom line is that petitioner was not authorized to be anywhere outside of his home except for the designated pass destination, Sam's Club, for that four-hour period, and petitioner deviated from his custody plan. Petitioner escaped from the bounds of his custody arrangement. The fact that petitioner left home confinement pursuant to a pass and returned before its expiration is immaterial. Code 200 specifically accounts for situations in which an inmate voluntarily returns to custody. He could have been charged with a more serious infraction had he not returned within the appointed time. At least some evidence supports the BOP's determination that petitioner deviated from his approved pass itinerary and, in so doing, escaped from non-secure confinement. By signing the Community Based Program Agreement, petitioner acknowledged that the failure to remain at required locations could result in discipline or prosecution for escape. Dkt. 27-2. And petitioner received a penalty that is within the ranges specified in the program handbook. Dkt. 27-1, at 23-24, 26.

Whether the BOP *could* or *should* have charged petitioner with a less-severe offense is irrelevant. As I discussed at the hearing, my role here is not to consider whether the BOP selected the most appropriate disciplinary charge or whether the punishment fit the crime. My role is to determine whether some modicum of evidence supports the charge that the BOP did select and enforce. *See Webb*, 224 F.3d at 652 ("It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision.").

Because petitioner received due process before losing his good-time credit, I will deny the petition.

6

ORDER

IT IS ORDERED that:

1. Petitioner Andrew Rovito's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, Dkt. 5, is DENIED.

2. The clerk of court is directed to enter judgment for respondent and close this case.

Entered May 5, 2016.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge